UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anthony Lavelle Edwards                    Civil No. 06-1450 (JNE/FLN)

        Petitioner,

  v.                                                 **REPORT AND RECOMMENDATION**

State of Minnesota,

        Respondent.

_____

Anthony Lavelle Edwards, *Pro Se* Petitioner.
Marcy S. Crain, Assistant County Attorney, for Respondent.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the

Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [#1].  Respondent filed

a response in opposition to Petitioner's petition [#6].  Petitioner thereafter filed a reply memorandum

[#9].  The matter was referred to the undersigned for Report and Recommendation pursuant to 28

U.S.C. § 636 and Local Rule 72.1.  For the reasons which follow, this Court recommends the

Petition be denied.

## I.  BACKGROUND

A jury convicted Petitioner of second degree murder in Anoka County District Court on July

15, 2003.   Petitioner received a 426-month sentence for this offense. Petitioner appealed his

conviction to the Minnesota Court of Appeals.  The undersigned accepts the facts as stated by the

Minnesota Court of Appeals:

> On May 11, 2002, appellant Anthony Edwards walked into the Minneapolis Adult
> Detention Center and presented a note explaining his desire to turn himself in to
> police. Edwards gave police a photograph of a female he identified as Cha'Nar

Kennedy, stated he had "shot [his] girl," and provided the victim's address in Coon Rapids. The Anoka County Sheriff confirmed that Cha'Nar Kennedy was shot dead in her home. Edwards told the deputies that he threw the gun off a bridge.

A grand jury indicted Edwards for first-degree murder in violation of Minn Stat. 609.185(1). The jury heard testimony from the victim's friends and family concerning the relationship between the victim and Edwards, which the victim had recently ended. After ending the relationship, the victim changed the locks on her home, but found keys for the new locks in Edwards's car. She told family members that this concerned her, and she was planning to have the locks changed again.

The last people to see the victim alive recounted the events leading up to the shooting, which took place around 11:30 p.m. When the victim obtained a ride home from her daughter's father, Torrance Gray, she invited Gray and one of his children to spend the night at her home. When they arrived around 11:00 p.m., Edwards was there. The victim told Gray he should leave, and Edwards and the victim discussed whether Gray had intended to spend the night. Gray left, and the children were fed and put to bed. Edwards and the victim smoked marijuana and may have been drinking alcohol. Edwards was overheard on the telephone stating, "This bitch got me messed up." Around 11:30 p.m., neighbors heard a noise believed to be a gunshot. A neighbor saw Edwards leave the victim's home at about 1:30 a.m.

During the trial, the state sought to introduce Edwards's prior convictions of armed robbery in 1990, third-degree assault in 1998, and fifth-degree controlled substance crime in 2000 as impeachment evidence if Edwards testified. The district court ruled that only the robbery and drug convictions were admissible. The state also sought to produce witness testimony that the victim's hearsay statements that she had changed her locks and was trying to prevent Edwards from making keys to fit her new locks. The district court admitted the testimony under the state-of-mind exception to the hearsay rule.

Through testimony from the state's witnesses, Edwards attempted to introduce his own hearsay statement to police that he could not believe the gun went off. The district court ruled that the statement was inadmissible hearsay. Edwards also requested a jury instruction on heat-of-passion manslaughter. But the district court refused to give the instruction after determining that the evidence presented was insufficient for the jury to convict Edwards of manslaughter in the heat of passion.

The jury acquitted Edwards of first-degree murder and convicted him of intentional second-degree murder in violation of Minn. Stat. 609.19(1).

State v. Edwards, No. A03-1825, 2004 WL 2094454, at *1-2 (Minn. Ct. App. Sept. 21, 2004).

At the Minnesota Court of Appeals, Petitioner argued he was denied his due process right to a fair trial, entitled to a new trial due to prosecutorial misconduct in the closing argument, and entitled to an instruction on the lesser-included offense of heat of passion manslaughter. (Resp't

Answer to Pet. for Writ of Habeas Corpus (hereinafter "Answer") Ex. 1, 3-4.) Petitioner based his due process right to a fair trial argument on the trial court's admission of his prior convictions for impeachment, admission of hearsay evidence, and exclusion of hearsay evidence supporting petitioner's defense theory that the shooting was accidental. (Answer Ex.1, 12-40.) Petitioner based his prosecutorial misconduct argument on the prosecutors analogy to a game show in explaining the evidentiary standard of proof beyond a reasonable doubt, which the petitioner did not object to the prosecutor's statement at the trial court level. (Answer Ex.1, 41-45.) Petitioner based his right to an instruction on a lesser-included offense argument on the trial court's refusal to instruct the jury on heat-of-passion manslaughter when evidence supported such a charge. (Answer Ex.1, 46-55.)

On September 21, 2004, the Minnesota Court of Appeals affirmed the second-degree murder conviction in the Anoka County District Court. Edwards, 2004 WL 2094454, at *1. The Minnesota Court of Appeals held that the District Court did not abuse its discretion in admitting prior convictions for the purpose of impeachment. Id. at *2-3. Furthermore, the Minnesota Court of Appeals held that the District Court's ruling admitting the victim's hearsay statement and excluding the Petitioner's hearsay statement was proper. Id. at *4-5. In regard to Petitioner's request for an instruction of a lesser-included offense of heat-of-passion manslaughter, the Minnesota Court of Appeals held that the District Court correctly determined that insufficient evidence existed to support heat-of-passion manslaughter. Id. at *5. Finally, the Minnesota Court of Appeals held that the prosecutor's reference to a game show in the closing statement was not unduly prejudicial. Id. at *6-7.

Petitioner filed a Petition for Review of the Court of Appeals' Decision to the Minnesota Supreme Court. (Answer Ex. 5.) On December 14, 2004, the Minnesota Supreme Court denied

Petitioner's Petition for Review.  (Answer Ex. 7.)

In his petition for a writ of habeas corpus, Petitioner advances claims based upon his due process right to a fair trial.  Petitioner argues that his right to present evidence in his defense was violated when the trial court improperly: (1) admitted his prior conviction for impeachment, (2) admitted a hearsay statement from the victim that violated petitioner's rights under the Confrontation Clause, and (3) excluded his statements to law enforcement supporting his defense theory.  The record reflects and the respondent agrees that Petitioner has exhausted his state court remedies on these claims in his appeal to the Minnesota Court of Appeals and Petition for Review to the Minnesota Supreme Court.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners.  The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the

United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.' Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13 (quoting 28 U.S.C. § 2254 (d)(1)). The Court further explained the "unreasonable application" clause:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. 529 U.S. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . .presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

A federal district court is not allowed to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show

that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in <u>Williams</u>.

Federal habeas relief is only available to a person in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")  As a threshold matter, a petitioner must present a federal question in his petition for relief.

### III.  DISCUSSION

**A.      Evidentiary rulings during the trial did not deny Petitioner's due process right to a fair trial.**

Petitioner seeks habeas relief based on the theory that the trial court's evidentiary rulings denied his due process right to a fair trial.  Petitioner claims that the trial court's evidentiary rulings prevented him from presenting a defense.  "Because questions concerning the admissibility of evidence are matters of State law, proceedings is limited to determining whether the defendant's constitutional rights have been violated."   <u>Harris v. Bowersox</u>, 184 F.3d 744, 752 (8th Cir.1999)(citing <u>Rainer v. Dept. of Corrections</u>, 914 F.2d 1067, 1072 (8th Cir.1990)).  Furthermore, "[Petitioner] must show that the alleged error rendered the entire trial fundamentally unfair–that there is a reasonable probability that the error complained of affected the outcome of the trial . . . ." <u>Harris</u>, 184 F.3d at 752.  (citing <u>Carter v. Armontrout</u>, 844 F.2d 1294, 1296 (8th Cir.1991).

1.      **Admission of Petitioner's prior convictions for impeachment did not violate Petitioner's due process right to a fair trial.**

Petitioner alleges that the admission of prior convictions for impeachment prevented him from testifying in his defense.  It is acknowledged that "[t]he right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution . . . " and is "essential to due process of law in a fair adversary process." Rock v. Arkansas, 483 U.S. 44, 51 (1987) (citing Faretta v. California, 422 U.S. 806, 819, n. 15 (1975).  However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions.  A defendant's interest in presenting evidence may thus bow to accommodate other legitimate interest in the criminal trial." U.S. v. Scheffer, 523 U.S. 303, 308 (1998) (citations omitted).

In creating an evidentiary rule allowing for the admission of prior convictions for impeachment is to assist the trier of fact in determining the credibility of the defendant witness.  See Minn. R. Evid 609. The "State . . . unquestionably [has] a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial." Scheffer, 523 U.S. at 309.  Evidentiary rules ". . . do not abridge an accused's  right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes that they are designed to serve." Id. at 308 (citing Rock, 483 U.S. at 56.)

Petitioner was not prevented from testifying.  He was free to take the stand and tell his version of the night in question.  The evidentiary rulings by the trial court allowed for the jury to determine the veracity of the Petitioner if he chose to testify.  The decision by the trial court not to allow Petitioner's 1998 assault conviction for impeachment demonstrates that the decision was not arbitrary.  The ruling demonstrates that care was taken to ensure the prior convictions were only

used to assist the jury in evaluating the truthfulness of the defendant and not as proof of the crime.

In short, none of the Petitioner's constitutional rights were violated by the trial court allowing the admission of prior convictions for the purpose of impeachment. The State's evidentiary rules were not applied in an arbitrary or disproportionate manner.

**2.     Admission of the victim's hearsay statements did not violate Petitioner's rights under the Confrontation Clause.**

Petitioner challenges the admission of the victim's hearsay statements to family members that she intended to change her locks because Petitioner still maintained a key to her apartment. The trial court admitted the hearsay statements under the state of mind exception. Petitioner claims that admission of such statements were violative of his rights under the Confrontation Clause.

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court "held that the Confrontation Clause bars admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity to cross examine." Ferguson v. Roper, 400 F.3d 635, 639 (8th Cir. 2005)(citations omitted). After Crawford, the Supreme Court held that a "casual remark to an acquaintance" is nontestimonial. Davis v. Washington, 126 S. Ct. 2266, 2274 (2006). Petitioner agrees that the victim's statements, in this case, were nontestimonial under Crawford v. Washington. (Answer Ex.1, 41-45.) Under Crawford, "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framer's design to afford the States flexibility in their development of hearsay law." Crawford, 541 U.S. at 68.

The trial court applied Minn. R. Evid. 803(3) which provides for admission of an unavailable declarant's hearsay statement of then-existing state of mind. The exception created under Minn. R.

Evid. 803(3) is consistent with affording the State flexibility in creating their hearsay jurisprudence. Petitioner has failed to show that Minn. R. Evid. 803(3) violates his rights under the Confrontation Clause or any other Constitutional Provision.

### 3.    Exclusion of the Petitioner's hearsay statements to police did not violate Petitioner's rights under the Confrontation Clause.

Petitioner challenges the trial court ruling that excluded his statements to police that  he couldn't believe the gun went off.  The trial court made a pre-trial ruling to exclude this evidence. However, Hennepin County Deputy Sheriff Richard Boelter testified that "[Petitioner] did state that he didn't mean to shoot her and couldn't believe the gun went off."  The State did not object to Deputy Boelter's testimony.  Since the Petitioner's hearsay statements were not excluded, Petitioner has not shown a constitutional injury from the trial court's ruling to exclude the Petitioners hearsay statement.

### B.    Petitioner's conviction is supported by the evidentiary record.

Although Petitioner did not directly raise the issue of sufficiency of the evidence in his habeas corpus petition, his submissions supporting his habeas corpus petition make it clear that he challenges the sufficiency of the evidence presented at the trial court.  Since this Court construes *pro se* pleadings liberally, Petitioner's argument based upon the sufficiency of the evidence will be considered.[1]  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Petitioner has failed to provide clear and convincing evidence to rebut the state courts factual

---

[1]Petitioner filed a handwritten brief disputing evidence and a copy of the Minnesota Court of Appeals Opinion with comments written in the margins that indicate that he disagrees with the factual conclusions reached by the trial court.  Petitioner filed a *pro se* supplemental brief to the Minnesota Court of Appeals that mirrored Petitioner's filings in this case,  therefore Petitioner's sufficiency of the evidence claim has been exhausted in the state courts.

determination.  Petitioner must show that the state court determination cannot be reasonably

supported by the evidence.  Petitioner has not provided any evidence to call the state court

determination into question, nor has demonstrated that the state court determination is not supported

by the record.  His challenge to the sufficiency of the evidence is based upon his own assertions that

the shooting was accidental, this does not meet the very high threshold for reviewing the evidentiary

support in a habeas corpus petition under 28 U.S.C. § 2254(d)(2).

## IV.   RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**

that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DENIED,** and that this action be

**DISMISSED WITH PREJUDICE.**


DATED: January 29, 2007                         s/ *Franklin L. Noel*
                                                FRANKLIN L. NOEL
                                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with
the Clerk of Court and serving on all parties, on or before **February 15, 2007**, written objections
which specifically identify the portions of the proposed findings or recommendations to which
objection is being made, and a brief in support thereof. A party may respond to the objecting party's
brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500
words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court,
and it is, therefore, not appealable to the Circuit Court of Appeals.